UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KARRIE MURR,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-459-DCP |
| | ) |
| ANDREW M. SAUL,[2] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 18].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Plaintiff seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

---

[1] On January 22, 2020, the Court granted the claimant, Tony Price's Motion to Substitute Party [Doc. 25], which stated that Mr. Price had died on July 12, 2019, and substituted his daughter, Karrie Murr, as the appropriate party pursuant to Fed. R. Civ. P. 25(a). [Doc. 27]. However, in the interest of clarity, the Court will refer to the claimant, Tony Price, as Plaintiff in this matter.

[2] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

## I. PROCEDURAL HISTORY

On November 19, 2014 and April 24, 2015, respectively, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on October 1, 2012. [Tr. 17, 224–39]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 166–67]. A hearing was held on June 23, 2017. [Tr. 38–58]. On March 6, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 17–31]. The Appeals Council denied Plaintiff's request for review on September 11, 2018 [Tr. 1–8], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on October 26, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2012, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. From October 1, 2012 through June 19, 2017, the period during which the claimant was under a disability, the claimant had the following severe impairments: atherosclerotic cardiovascular disease (ASCVD), hypertension, peripheral vascular disease, mild spondylosis in the lumbar spine, depression, anxiety, and obesity (20 CFR 404.1520(c) and 416.920(c)).

2

4. From October 1, 2012 through June 19, 2017, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, from October 1, 2012 through June 19, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. The claimant can push and pull with his bilateral lower extremities no more than frequently. The claimant must avoid concentrated exposure to pulmonary irritants, hazards, vibrations, and temperature extremes. The claimant must never climb ladders, ropes, or scaffolds. The claimant can balance, stoop, kneel, crouch, crawl, and climb ramps and stairs no more than frequently. The claimant must perform simple and routine tasks. The claimant must interact with co-workers no more than occasionally and must avoid interacting with the general public. The claimant must perform work in a setting where changes are infrequent and gradually introduced. The claimant would be off task or off pace 1 hour out of an 8-hour day due to pain.

6. From October 1, 2012 through June 19, 2017, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was an individual closely approaching advanced age on the established disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. From October 1, 2012 through June 19, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant was under a disability, as defined by the Social Security Act, from October 1, 2012 through June 19, 2017 (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has not developed any new impairment or impairments since June 20, 2017, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from October 1, 2012 through June 19, 2017.

13. Beginning June 20, 2017, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. Medical improvement occurred as of June 20, 2017, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. After careful consideration of the entire record, the undersigned finds that, beginning June 20, 2017, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. The claimant can push and pull with his bilateral lower extremities no more than frequently. The claimant must avoid concentrated exposure to pulmonary irritants, hazards, vibrations, and temperature extremes. The claimant must never climb ladders, ropes, or scaffolds. The claimant can balance, stoop, kneel, crouch, crawl, and climb ramps and stairs no more than frequently. The claimant must perform simple and routine tasks. The claimant must interact with co-workers no more than occasionally and must avoid interacting with the general public. The claimant must perform work in a setting where changes are infrequent and gradually introduced.

17. The claimant is still unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18. The claimant's age category has not changed since June 20, 2017 (20 CFR 404.1563 and 416.963).

19. The claimant's education level has not changed (20 CFR 404.1564 and 416.964).

20. Beginning on June 20, 2017, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning June 20, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

22. The claimant's disability ended June 20, 2017, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

[Tr. 21–30].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

5

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. CLOSED PERIOD OF DISABILITY AND MEDICAL IMPROVEMENT

"In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled." *Gillespie v. Comm'r. of Soc. Sec.,* No. 09-11191, 2010 WL

4063713, at *3 (E.D. Mich. Oct. 14, 2010) (citing *Long v. Sec'y of Health & Human Servs.,* 45 F.3d 430 (Table), 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994)). If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end his benefits. *Niemasz v. Barnhart,* 155 F. App'x 836, 839–40 (6th Cir. 2005); *see also Cobb v. Comm'r of Soc. Sec.,* No. 1:09-cv-51, 2010 WL 565260, at *8 (W.D. Mich. Feb. 11, 2010) (citing *Shepherd v. Apfel,* 184 F.3d 1196, 1200 (10th Cir. 1999) (medical improvement standard as set forth in 20 C.F.R. § 416.994 applies to closed period cases); *Long,* 1994 WL 718540, at *2; *Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir. 1993)).

The regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled . . . ." 20 C.F.R. § 416.994a(c). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs or laboratory findings associated with your impairment(s)[.]" *Id.* There must be "substantial evidence" of "medical improvement" and proof that the claimant is no longer disabled to satisfy the medical improvement standard. *Niemasz*, 155 F. App'x at 840 (citing 42 U.S.C. § 423(f)(1)). If the Commissioner's findings on the issue of medical improvement are supported by substantial evidence, the Commissioner's decision must be affirmed. *Gillespie,* 2010 WL 4063713, at *3 (citing 42 U.S.C. § 405(g)).

An "eight-step sequential analysis applies when evaluating cases of medical improvement after finding a closed period of disability." *Maudlin v. Comm'r of Soc. Sec.*, No. 1:14-CV-256, 2015 WL 13738802, at *3 (S.D. Ohio July 15, 2015), *report and recommendation adopted sub nom.*, *Maudlin v. Astrue*, 2015 WL 5212049 (S.D. Ohio Sept. 8, 2015). "In such cases, the Commissioner examines 'whether the beneficiary is working (step 1); if not, does the impairment

meet or equal a Listing (step 2); if not, has there by 'any' medical improvement (step 3); if so, does the medical improvement relate to the ability to work (step 4); if there is no improvement related to ability to work, does an exception apply (step 5); if there is an improvement related to work ability, are the current impairments alone or in combination 'severe' (step 6); if so, does the beneficiary's residual functional capacity permit performance of past work (step 7); if not, does the beneficiary have the RFC to perform other work (step 8).'" *Id.* (quoting *Booms v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 739, 744 (E.D. Mich. 2003)).

Where a claimant is found disabled but an ALJ holds that benefits should be subsequently ceased due to a medical improvement, "the central question is whether [the] claimant's medical impairments have improved to the point where [the claimant] is able to perform substantial gainful activity." *Kennedy v. Astrue,* 247 F. App'x 761, 764 (6th Cir. 2007) (citing 42 U.S.C. § 423(f)(1)). Medical improvement is defined as:

> Any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s). . . .

20 C.F.R. § 416.994(b)(1)(ii). Further, the Commissioner bears the burden of demonstrating a "medical improvement." *Kennedy*, 247 F. App'x at 754–65; *see, e.g.*, *Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460, at *4 (E.D. Mich. June 1, 2011)

Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b) (1)(i). In cases where the ALJ finds that the claimant is disabled for a closed period in the same decision in which he found that a medical improvement occurred, the disability onset date is the "point of comparison." Program Operations Manual Systems DI 28010.105, *available at* https://secure.ssa.gov/apps10/poms.nsf/links/0428010105; *see*

9

*also Booms*, 277 F. Supp. 2d at 745 (finding the ALJ's use of the disability onset date as the comparison point date in a closed period case to be "consistent with 42 U.S.C. § 423(f) and with the Secretary's regulation, 20 C.F.R. § 404.1594)). After a finding of medical improvement, the ALJ must then compare the current severity of the claimant's medical impairment(s) and the claimant's impairments at the time of the favorable decision (i.e., the "point of comparison"). *See* 20 C.F.R. § 416.994(b)(viii); *Kennedy*, 247 F. App'x at 765 (citing 20 C.F.R. § 404.1594(c) (1)).

## VI. ANALYSIS

Plaintiff states that his "assignment of error in this case is succinct: the ALJ's finding that his medical conditions 'improved' and his disability ended is not supported by substantial evidence." [Doc. 20 at 4]. Alternatively, Plaintiff claims that the ALJ improperly failed to evaluate his impairment of borderline intellectual functioning, and failed to afford the appropriate weight to the opinions of consultative examiners Kevin Blanton, Ph.D. and Ellen Denny, Ph.D. [*Id.* at 10–15]. The Court will address Plaintiff's specific allegations of error in turn.

### A. ALJ's Finding of Medical Improvement

Plaintiff asserts that the ALJ improperly found that he had medically improved as of June 20, 2017. Plaintiff maintains that the ALJ erred in making this finding solely based on a treatment note following his stent surgery on June 19, 2017, as the disabling limitation in the RFC prior to June 20, 2017 was that Plaintiff would be off-task or off-pace for one hour due to his pain, and the ALJ's decision found that he "would no longer be off task during a workday . . . due to pain" the day after his surgery. [*Id.* at 7]. Plaintiff notes that although his treating physician stated that his symptoms were "greatly improved" and he was "doing well," the treatment note must be read in the context of his subsequent treatment following the surgery in response to his complaints of

discolored testicles, right groin pain, and swelling. [*Id.*]; *see* [Tr. 797–98]. Therefore, Plaintiff claims that the ALJ improperly relied upon these treatment notes to find medical improvement, which was contradicted at the disability hearing by his testimony that his functional ability to stand and walk had not improved. [Doc. 20 at 7].

Plaintiff additionally asserts that the record demonstrates that there was a combination of physical impairments which caused him pain, and that the ALJ did not consider "the possibility that this one single observation of improvement was only temporary, despite the fact that in-stent restenosis is a common clinical problem." [*Id.* at 9]. Plaintiff states that "there is no indication that [the ALJ] made any attempt to obtain additional medical evidence, medical source statements, or even a more recent statement from Plaintiff to demonstrate any lasting improvement in his ability to perform sustained-work related activity." [*Id.* at 10].

The Commissioner responds that the ALJ considered the medical record of Plaintiff's lower extremity vascular condition leading up to the stent placement, and it was appropriate for the ALJ to find medical improvement of Plaintiff's impairments based upon the treatment note stating that he had greatly improved. [Doc. 24 at 11–12]. The Commissioner urges that the ALJ is tasked with determining conflicts between Plaintiff's testimony and the medical record, and that "[a]t best, Plaintiff's argument represents a reasonable but alternative view of the final report from Dr. Stevens." [*Id.* at 12]. Moreover, the Commissioner notes that the ALJ still found that Plaintiff had serious physical limitations after his surgery, but that "the improvement in his leg symptoms ultimately meant he was no longer disabled." [*Id.* at 13]. The Commissioner also maintains that Plaintiff's argument that his improvement was temporary is merely speculative, and he should have provided evidence of any subsequent decline. [*Id.*].

In the disability decision, the ALJ first found that "following stent surgery on June 19, 2017, medical records show normal findings on testing and indicate that his symptoms were greatly improved" and that "[s]uch evidence shows medical improvement." [Tr. 28]. When determining Plaintiff's RFC following the improvement on June 20, 2017, the ALJ reviewed that "[t]he evidence establishes that on June 19, 2017, the claimant underwent stent placement in both legs for lower extremity peripheral vascular disease with pain," on follow-up "[a] subsequent pseudoaneurysm report revealed no hemodynamically significant abnormalities in the iliac, common femoral, and superficial femoral arteries and veins," and "[t]here was no evidence of pseudoaneurysm." [Tr. 29]. Lastly, the ALJ cited to a July 2017 treatment note which indicated that Plaintiff's "symptoms were greatly improved." [*Id.*].

As the main issue presented by Plaintiff to the Court is his June 19, 2017, stent surgery and follow-up treatment, the Court will not review much of the medical record prior to the ALJ's finding of medical improvement. On April 27, 2017, Plaintiff reported bilateral leg pain with ambulation, and that he gets severe pain in his calves and back of his thighs after walking fifty yards, which has been present for several months. [Tr. 702]. A Doppler ultrasound examination of Plaintiff's legs indicated aorto-iliac, bilateral femoral-popliteal, and bilateral pedal arch/digit arterial occlusive disease. [Tr. 695]. After Plaintiff was referred to a vascular specialist, treating surgeon Scott Stevens, M.D., and on May 23, 2017, Dr. Stevens noted that Plaintiff's symptoms included bilateral lower extremity pain; aching, burning, throbbing, stinging and tightness when walking; as well as discoloration and swelling. [Tr. 806]. Prior to his surgery, Plaintiff's diagnosis was lower extremity peripheral vascular disease with pain. [Tr. 800].

On June 19, 2017, Dr. Stevens used ultrasound to install two stents in Plaintiff's leg arteries. [Tr. 807]. Treatment notes reflect that "[a]t the completion of the procedure, the patient

12

had improved flow to the feet, small minor hematomas[,] and was hemodynamically stable." [Tr. 808]. During his hearing on June 23, 2017, Plaintiff testified that his main limiting factor was his vascular disease [Tr. 42], and that his ability to stand and walk had not improved as of the day of the hearing [Tr. 53]. Plaintiff called Dr. Steven's office on June 26, 2017, to complain of a discolored testicle and a hematoma in his right groin. [Tr. 805]. That same date, a pseudoaneurysm report from the University of Tennessee Medical Center notes that Plaintiff's right groin was negative for pseudoaneurysm, duplex imaging revealed no hemodynamically significant abnormalities in the iliac, common femoral, and superficial femoral arteries and veins, and there was an avascular mass identified in the right groin. [Tr. 802]. A post-op treatment note from Dr. Stevens on July 18, 2017, indicates that Plaintiff's symptoms were "greatly improved." [Tr. 804].

The Commissioner correctly states that the ALJ was responsible for interpreting the medical record and notes the effect of differing interpretations of July 18, 2017, treatment note. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Therefore, the question before the Court is whether substantial evidence

supports the ALJ's finding that medical improvement occurred as of June 20, 2017, based upon Plaintiff's treatment notes in the month following his stent surgery.

As the Court has previously detailed, in closed period cases, the ALJ is tasked with determining whether medical improvement has occurred between the disability onset date and the alleged date of medical improvement. Ultimately, however, the Court finds that substantial evidence does not support the ALJ's finding that medical improvement occurred as of June 20, 2017, largely in part due to the limited medical record before the ALJ following Plaintiff's surgery.

The parties do not dispute that the ALJ's finding of medical improvement was largely based on "the single treatment note from Dr. Stevens," as the Commissioner asserts that "it was also within her zone of choice to find Dr. Stevens's 'greatly improved' treatment note was significant." [Doc. 24 at 12]. While the ALJ's RFC determination must be supported by substantial evidence, it is not necessary that this determination be consistent with an RFC offered by a particular physician. *See Mokbel-Aljahmi v. Commissioner of Social Security*, 732 F. App'x 395, 401 (6th Cir. 2018) (stating the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ"). However, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Further, "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D.

Ohio 2008).

In *Deskin*, the Northern District of Ohio found that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* While *Deskin* has been widely criticized as being overly broad, it has been interpreted to detail that "[s]uch general rule 'applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence.'" *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435, at *3 (S.D. Ohio July 29, 2019) (quoting *Kizys v. Comm'r of Soc. Sec.,* 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)).

The Court finds the rationale and subsequent interpretation of *Deskin* analogous to cases where the ALJ makes a finding of medical improvement based upon a limited medical record and without an applicable medical opinion. "In the absence of any current medical opinion on plaintiff's limitations, the Court must conclude that the ALJ improperly arrived at an RFC based on her own lay interpretation of the post-surgery medical records." *See Bracksieck v. Saul*, No. 2:18-CV-661-AC, 2019 WL 2567143, at *10–11 (E.D. Cal. June 21, 2019). The ALJ's conclusion that Plaintiff's condition improved, including the ability to stand and walk, cannot be supported by substantial evidence where the finding of improvement was solely based on the ALJ's interpretation of Plaintiff's treatment notes and pseudoaneurysm report. *See, e.g.*, *Lagasse v. Berryhill*, No. 17-CV-212-JD, 2018 WL 1871454, at *4 (D.N.H. Apr. 18, 2018) ("The ALJ interpreted some normal findings in the treatment notes to mean that Lagasse's functional capacity had improved to the extent that she would no longer be absent three or four times each month. To

15

the extent the examination notes show good or normal results, the decision does not explain the ALJ's ability to translate those results into a finding of medical improvement and a lack of continuing absenteeism."). While substantial evidence may have supported the ALJ's finding of improvement if a more expansive medical record following Plaintiff's surgery was before the ALJ, the ALJ solely considered Plaintiff's treatment records in the month following his surgery. Moreover, Plaintiff's "postoperative diagnosis" remained "lower extremity peripheral vascular disease with pain and severe multilevel arterial occlusive disease." [Tr. 800].

While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless whether the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392, 397 (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Human Servs.,* 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing").

Here, the Court finds that the ALJ failed to develop the record with respect to the period of time following Plaintiff's surgery, in which the ALJ found that Plaintiff's impairments had medically improved. The Commissioner asserts that Plaintiff did not provide the SSA with any evidence that his condition had not improved, and that claimants have an ongoing policy to disclose any additional evidence under Social Security Ruling 17-4p. *See* [Doc. 24 at 13]. However, the ALJ retained the burden to develop the record, and "[b]ecause the ALJ first determined that [Plaintiff] was disabled beginning on [his] alleged disability onset date, it is the Commissioner who bears the burden of proof to establish that the Plaintiff's impairment has medically improved." *Maudlin v. Comm'r of Soc. Sec.*, No. 1:14-CV-256, 2015 WL 13738802, at *3 (S.D. Ohio July 15,

2015) (citing 42 U.S.C. § 423(f)(1)), *report and recommendation adopted sub nom.*, *Maudlin v. Astrue*, 2015 WL 5212049 (S.D. Ohio Sept. 8, 2015); *see, e.g.*, *DeMico v. Berryhill*, No. 3:17-CV-805(SALM), 2018 WL 2254544, at *7 (D. Conn. May 17, 2018) ("The Court appreciates defendant's frustration, but the law of this Circuit places the burden on the ALJ, <u>not</u> the claimant, to develop the administrative record . . . Most significant, however, is that the ALJ did not attempt to obtain any retrospective medical opinions regarding plaintiff's functional capacity during the relevant time period [of improvement]."); *Garza v. Astrue*, No. 3:11-CV-3545-G-BN, 2013 WL 796727, at *6 (N.D. Tex. Feb. 7, 2013) ("[T]he ALJ based his decision with respect to medical improvement on a select few medical records without any testimony or opinions from any physicians or experts. Defendant failed to provide the ALJ with any evidence of medical improvement, despite the fact that he had the burden to do so. Notably, the ALJ seemed to place this burden on the claimant . . . [t]o the extent that the ALJ did so, such a demand was improper."), *report and recommendation adopted by*, 2013 WL 818723 (N.D. Tex. Mar. 5, 2013).

In this end, the Court also differentiates the present case—where the ALJ found a closed period of disability shortly followed by a period of medical improvement after having failed to develop the record with respect to the period of improvement—from a case in which the ALJ found that a claimant's condition had improved despite sparse treatment records. *Cf. Gray v. Astrue*, No. 4:09-CV-01468, 2010 WL 2106200, at *4 (N.D. Ohio Mar. 31, 2010) ("If Gray's position were correct, a claimant could simply stop seeking medical treatment after his or her impairments reached their zenith, point to the dearth of medical records, and argue that a finding of medical improvement cannot, therefore, be supported by substantial evidence."), *report and recommendation adopted sub nom.*, *Gray v. Comm'r of Soc. Sec.*, 2010 WL 2106196 (N.D. Ohio May 25, 2010).

Accordingly, the ALJ's finding of medical improvement is not supported by substantial evidence, and the ALJ failed to appropriately develop the record following Plaintiff's alleged period of medical improvement. The ALJ erred by interpreting the medical evidence immediately following Plaintiff's surgery without the assistance of a medical opinion or an established record of treatment. The Court notes that as Plaintiff is deceased, in order to properly develop the record on remand, the ALJ should review Plaintiff's treatment records following his surgery, and potentially recontact the treating source or have a medical expert testify at the hearing if found to be necessary.

B. ALJ's Review of Opinions of Nonexamining State Agency Physicians

Plaintiff claims that the ALJ improperly afforded great weight to Dr. Denny's opinion, rather than Dr. Blanton's opinion, and erred by failing to consider his borderline intellectual functioning. [Doc. 24 at 12–15]. Plaintiff maintains that the ALJ erred by affording more weight to Dr. Denny's opinion because Dr. Blanton's opinion included additional limitations not reported at the time of Dr. Denny's examination, despite the fact that Dr. Denny recommended testing to rule out borderline intellectual functioning, and such testing was performed by Dr. Blanton during his consultative examination. [*Id.* at 15].

As Plaintiff's case will be remanded for further development of the record following the alleged period of medical improvement, the Court will not analyze Plaintiff's remaining arguments. However, while the ALJ did not find Plaintiff's borderline intellectual functioning to be a severe impairment, she did consider Plaintiff's mental impairments in the RFC determination, making any such error harmless. *See Huffstetler v. Saul*, No. 3:18-CV-210-DCP, 2019 WL 4752270, at *5 (E.D. Tenn. Sept. 30, 2019) ("[I]t is well settled that the ALJ's failure to identify some impairments as 'severe' is harmless where the ALJ continues the disability determination

and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations.") (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)). On remand, the ALJ is instructed to address Plaintiff's argument that Dr. Blanton's examination included additional testing requested by Dr. Denny, thus leading to the inclusion of additional limitations.

## VII. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **DENIED**.[3] This case will be **REMANDED** to the SSA for the ALJ to appropriately address the issue of medical improvement and subsequent steps required to establish that the prior period of disability ended, and, if necessary, obtain testimony from medical experts as to the claimant's physical impairments.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

---

[3] Defendant also filed a Motion to Stay [Doc. 11] in light of the lapse of appropriations to the Department of Justice, to which Plaintiff's counsel did not object. As appropriations have been restored, Defendant's motion [**Doc. 11**] is **DENIED AS MOOT**. The Commissioner subsequently filed his Answer to Plaintiff's Complaint [Doc. 12], as well as a transcript of the administrative record. Accordingly, the Commissioner's Answer is considered timely-filed.